**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| EDWARD MCDONALD, JR.,<br><br>        Plaintiff<br><br>v.<br><br>J.E. THOMAS, et al.,<br><br>        Defendants | CIVIL ACTION NO. 1:13-CV-01471<br><br>(RAMBO, J.)<br>(MEHALCHICK, M.J.) |

**REPORT AND RECOMMENDATION**

This is a civil rights action initiated upon the Court's receipt and filing of a complaint in this matter by *pro se* Plaintiff Edward McDonald on May 31, 2013. (Doc. 1). McDonald brings a federal *Bivens*[1] action and also seeks injunctive relief for alleged violations of his Fifth and Eighth Amendment rights while incarcerated at the United States Penitentiary in Lewisburg, Pennsylvania ("USP Lewisburg"). (Doc. 1, at 2-3). Named as Defendants in the caption of the complaint are J.E. Thomas, Warden of USP Lewisburg; Joe L. Norwood, the Northeast Regional Director of the Federal Bureau of Prisons ("BOP"); and Charles E. Samuels, the Director of the BOP. (Doc. 1, at 1). Pending before the Court is Defendants' motion to dismiss and for summary judgment, which was filed on November 8, 2013. (Doc. 22). On January 17, 2014, Defendants also filed a brief in support (Doc. 35), and a statement of material facts. (Doc. 36). McDonald filed his brief in opposition on April 9, 2014 (Doc. 50), along with a statement of material facts in dispute (Doc. 51) and several exhibits. (Doc. 52). Having been fully briefed, this matter is now ripe for disposition.

---

[1] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

I. **BACKGROUND**

At the time of filing his complaint, McDonald had been confined in the Special Management Unit ("SMU") at SCI Lewisburg since April 27, 2009. (Doc. 1, at 5). The SMU is classified as a non-punitive housing program in which inmates are confined under more restrictive conditions than for general population inmates. (Doc. 52-1, at 1). On November 19, 2008, the BOP issued Program Statement 5217.01, "Special Management Units," in which it describes SMU designation as potentially appropriate for "any sentenced inmate whose interaction requires greater management to ensure the safety, security, or orderly operation of Bureau facilities, or protection of the public," due to the inmate's participation or leadership in disruptive gang-related activity, history of serious or disruptive disciplinary infractions, participation in organized group misconduct, or other conduct that requires greater management of the inmate's interactions. (Doc. 52-1, at 2). The SMU is a four-level program designed to take a total of 18-24 months to complete, with inmates afforded gradually more opportunities for interaction, programming, and access to personal property as they progress through each level. (Doc. 52-1, at 7-10). An inmate who successfully completes all four levels is redesignated to the general population. (Doc. 52-1, at 1). Criteria for progression to a higher level include "[a]n inmate's institutional adjustment, program participation, personal hygiene, and cell sanitation . . . ." (Doc. 52-1, at 1). However, inmates that continually exhibit disruptive behavior are not promoted to the next level of the SMU and are instead designated to the SMU for an additional six months. (Doc. 52-1, at 11). If the disruptive behavior continues after the additional six months, "the inmate *may* be referred for designation to another appropriate facility, consistent with the orderly running and operations of [BOP] institutions." (Doc. 52-1, at 11) (emphasis added).

McDonald alleges a violation of his due process rights, asserting that at the time of filing his complaint he had been confined to the SMU for over four years and did not have any indication of when he could possibly be released from the SMU program. (Doc. 1, at 5). He argues that the permissive language found in the BOP Program Statement regarding SMUs has resulted in his indefinite confinement in the SMU at USP Lewisburg. (Doc. 1, at 5). In support of this contention, McDonald attaches four memoranda from BOP Northeast Regional Director Joe L. Norwood stating that McDonald's placement in the SMU program would be extended. (Doc. 52, at 64-67). The initial review, filed approximately two years from the date McDonald entered the SMU program, granted a brief extension for McDonald to complete the program or else be submitted for a program failure transfer. (Doc. 52, at 64). In subsequent reviews, however, Norwood imposed longer extensions in the SMU program on the basis of McDonald's continued inappropriate conduct and made no mention of the possibility of a program failure transfer. (Doc. 52, at 65-67).

McDonald also alleges that his indefinite confinement to the SMU is in violation of his constitutional right to due process because the SMU is not classified as either disciplinary segregation or administrative detention status—the two categories of Special Housing Units ("SHUs") recognized by the BOP's own regulations. (Doc. 1, at 6). *See* 28 C.F.R. § 541.22 ("When placed in the SHU, you are either in administrative detention status or disciplinary segregation status."). Disciplinary segregation and administrative detention each have their own applicable set of rules and procedures. *See* 28 C.F.R. § 541.20-.33. Because McDonald is not confined in accordance with either SHU status, he claims that he is left without any meaningful rules and procedures under which he could challenge the terms and conditions of his confinement in the SMU. (Doc. 1, at 6). As a

result of this, McDonald alleges that the BOP also violates the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.*, by maintaining the SMU program in a manner that is inconsistent with its own regulations and failing to comply with the APA "notice and comment" requirements. (Doc. 1, at 5-6).

McDonald also asserts that several conditions of his confinement at USP Lewisburg's housing unit G ("G-Unit") violate the Eighth Amendment's prohibition against cruel and unusual punishment. (Doc. 1, at 3). G-Unit is considered to be old and inferior in comparison to the other housing units at USP Lewisburg. (Doc. 1, at 3). Specifically, McDonald alleges the following conditions inside G-Unit: rust and mold within the cells, a lack of ventilation within the cells that can lead to uncomfortably hot temperatures in the summer months, numerous insects and rodents, and a lack of available cleaning supplies. (Doc. 1, at 3). McDonald is confined to an extremely small cell measuring approximately 6' x 10' feet, which he shares with a cellmate who invariably has a history of violence or psychological problems. (Doc. 1, at 3-4). G-Unit cells also have a window flap over the cell door viewport that remains closed from 6:00 a.m. until 10:00 p.m. daily. (Doc. 1, at 4). McDonald is entitled to up to five hours per week of recreation, but states that he is often denied recreation based on the arbitrary decision of correctional staff. (Doc. 52, at ¶ 12; Doc. 51, at ¶¶ 21-24). He also complains of the fact that the food is cooked and prepared differently for SMU inmates than for inmates in general population, and that SMU inmates are not offered the same variety of food. (Doc. 1, at 4). Lastly, McDonald had been sanctioned to a 90-day mattress restriction at the time he filed his complaint, so his mattress was taken from him each morning and returned in the evening. (Doc. 51, at ¶¶ 29-30). He asserts that the mattresses given to inmates on mattress restriction are thinner, smaller, and

of inferior quality, and as a result of sleeping on this mattress he developed neck and back injuries. (Doc. 51, at ¶¶ 29-30). In accordance with Federal Rule of Civil Procedure 56(c) and 28 U.S.C. § 1746, McDonald has attached seven affidavits from other inmates with personal knowledge of the conditions in G-Unit that corroborate his own declaration and the facts asserted in his complaint. (Doc. 52, at 1-25).

On June 22, 2015, the Court received notice that McDonald has been transferred from the SMU program at USP Lewisburg to the BOP's Administrative Maximum Facility ("ADX Florence") in Florence, Colorado. (Doc. 61; Doc. 62). The Court takes judicial notice that the SMU program is not administered at ADX Florence.[2]

## II. LEGAL STANDARDS

### A. RULE 12(b)(1) STANDARD

A Rule 12(b)(1) motion may be treated as either a facial or factual challenge to the court's subject matter jurisdiction. *Gould Electronics Inc. v. United States*, 220 F. 3d 169, 176 (3d Cir. 2000). In a factual attack under Rule 12(b)(1), the court may consider and weigh evidence outside the pleadings to determine if it has jurisdiction. *Gould Electronics Inc.*, 220 F.3d at 178. This 12(b)(1) factual evaluation may occur at any stage of the proceedings, from the time the answer has been served until after the trial has been completed. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891-92 (3d Cir. 1977). In addition, "[a] federal court may *sua sponte* dismiss a complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) when the allegations within the complaint 'are so

---

[2] *See* CNA Analysis & Solutions, *Federal Bureau of Prisons: Special Housing Unit Review and Assessment*, 1 (Dec. 2014), http://www.bop.gov/resources/news/pdfs/CNA-SHUReportFinal_123014_2.pdf (explaining that the category of restrictive housing in ADX Florence is distinct from SMUs).

attenuated and unsubstantial as to be absolutely devoid of merit, . . . wholly insubstantial, . . . obviously frivolous, . . . plainly unsubstantial, . . . or no longer open to discussion.'" *DeGrazia v. F.B.I.*, 316 F. App'x 172, 173 (3d Cir. 2009) (quoting *Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974)). "When a motion under Rule 12 is based on more than one ground, the court should consider the 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot." *In re Corestates Trust Fee Litig.*, 837 F. Supp. 104, 105 (E.D. Pa. 1993), *aff'd* 39 F.3d 61 (3d Cir. 1994).

### B. RULE 12(b)(6) STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The United States Court of Appeals for the Third Circuit has noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), continuing with our opinion in *Phillips* [*v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008)] and culminating recently with the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 209–10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's 'bald assertions' or 'legal conclusions'

6

when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). A plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court of the United States held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. In deciding a Rule 12(b)(6) motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

A document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment

would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

### C. RULE 56 SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir.1994).

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000). In making this determination, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw

inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

Moreover, all parties must receive an opportunity to present material to the court when a motion to dismiss is converted into a motion for summary judgment. *Rose v. Bartle*, 871 F.2d 331, 340 (3d Cir. 1989). Here, the Court finds McDonald clearly received that opportunity and availed himself of it by filing a declaration, seven affidavits, and other documents as attachments to his brief in opposition. (Doc. 52).

### III. DISCUSSION

#### A. *BIVENS* CLAIMS ARE BARRED BY SOVEREIGN IMMUNITY

The Defendants contend that McDonald's complaint should be dismissed in its entirety for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). (Doc. 35, at 13). Sovereign immunity constitutes a jurisdictional bar to claims against the United States and its agencies, unless Congress has specifically waived such immunity. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Moreover, "[a]n action against government officials in their official capacities constitutes an action against the United States [and is] barred by sovereign immunity, absent an explicit waiver." *Lewal v. Ali*, 289 F. App'x 515, 516 (3d Cir. 2008); *Webb v. Desan*, 250 F. App'x 468, 471 (3d Cir. 2007). Here, McDonald makes clear in the caption of his complaint that he asserts his claims against all three Defendants in their official capacities. (Doc. 1, at 1).

*Bivens* does not waive sovereign immunity with respect to claims brought against federal employees sued in their official capacities. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 72 (2001) ("If a federal prisoner in a BOP facility alleges a constitutional deprivation, he may bring a *Bivens* claim against the offending individual officer, subject to the defense of

qualified immunity. The prisoner may not bring a *Bivens* claim against the officer's employer, the United States, or the BOP."). Because McDonald solely brings suit against the Defendants in their official capacities, his *Bivens* claims against them fail for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).[3] *Lewal*, 289 F. App'x at 516; *Webb*, 250 F. App'x at 471. Accordingly, it is recommended that McDonald's *Bivens* claims against each Defendant be dismissed with prejudice.

### A. McDonald's Claims Seeking Injunctive Relief Are Moot

As discussed above, McDonald's remaining claims exclusively seek injunctive relief; he admits as much in his brief in opposition, and any *Bivens* action is barred by the doctrine of sovereign immunity. It is well settled that federal courts only have jurisdiction to decide an issue if it presents a live case or controversy. *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974). "The 'case or controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate. . . . The parties must continue to have a personal stake in the outcome of the lawsuit.'" *Williams v. Sherman*, 214 F. App'x 264, 266 (3d Cir. 2007) (quoting *Lewis v. Cont'l Bank Corp.,* 494 U.S. 472, 477-78, (1990)). A claim must be dismissed as moot "[i]f developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief . . . ." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 596 (3d Cir. 2010) (quoting *County of Morris v. Nationalist Movement,* 273 F.3d 527, 533 (3d Cir. 2001)). Because the question of mootness implicates a court's jurisdiction to decide a case, it must be

---

[3] The Court also notes that McDonald states in his brief in opposition that he only seeks injunctive relief as opposed to damages. (Doc. 50, at 2-3). It is unclear whether McDonald could sustain a claim under *Bivens* without also seeking damages. See *Bivens*, 403 U.S. at 410 (Harlan, J., concurring) ("For people in Bivens' shoes, it is damages or nothing.").

10

resolved even where the parties do not address the issue in their briefs. *Chong v. Dist. Dir., I.N.S.*, 264 F.3d 378, 383 (3d Cir. 2001).

In his complaint, McDonald requested relief in the form of removal from G-Unit of USP Lewisburg and from the SMU program, as well as a declaratory judgment with respect to the alleged constitutional violations that occurred at USP Lewisburg. (Doc. 1, at 7-8). These requests are now technically moot, as McDonald is no longer incarcerated at USP Lewisburg and no longer in the SMU program. (Doc. 61; Doc. 62). *See Capozzi v. Bledsoe*, 560 F. App'x 157, 159 (3d Cir. 2014) (dismissing prisoner's claims for injunctive relief as moot where prisoner was transferred from the SMU at USP Lewisburg to ADX Florence). Furthermore, McDonald's request for declaratory relief is also moot because declaratory relief cannot be obtained for alleged past wrongs, given that "[t]he remedy is . . . by definition prospective in nature." *CMR D.N. Corp. v. City of Philadelphia*, 703 F.3d 612, 628 (3d Cir. 2013). The Court notes that this determination is consistent with a long line of Third Circuit cases holding that a prisoner-plaintiff's transfer to another prison or release renders the prisoner's claims for injunctive relief moot. *See Spencer v. Sec'y Dep't of Corr.*, No. 14-2009, 2015 WL 3895302, at *1 n.2 (3d Cir. June 25, 2015) ("We note that, as Spencer was transferred out of SCI–Frackville in September 2012, his request for declaratory and injunctive relief against officials at that institution is moot."); *Banks v. Sec'y Pennsylvania Dep't of Corr.*, 601 F. App'x 101, 103 (3d Cir. 2015) ("The only relief potentially available to Banks for his RLUIPA claims is injunctive or declaratory, but to the extent that Banks seeks that relief against defendants at SCI—Retreat, his claims are moot because he was transferred to SCI—Somerset."); *Capozzi*, 560 F. App'x at 159; *Mollett v. Leicth*, 511 F. App'x 172, 174 (3d Cir. 2013) ("Mollett's transfer rendered the case moot; and because it was

unable to grant the relief sought, the District Court lacked jurisdiction over the merits of the case."); *Ibarra-Villalva v. USP-Allenwood*, 213 F. App'x 132, 134 (3d Cir. 2007) ("Here, Ibarra–Villalva's claims are moot to the extent that he still seeks a temporary restraining order and/or a transfer from USP–Allenwood because he has already been transferred to another institution, USP–Coleman, and states that his personal property has been returned."); *Sutton v. Rasheed*, 323 F.3d 236, 249 (3d Cir. 2003), *as amended* (May 29, 2003); *Abdul-Akbar v. Watson*, 4 F.3d 195, 206 (3d Cir. 1993) ("It is equally plain that, from that date forward, the district court could not provide Abdul–Akbar with meaningful relief by entering an injunctive order respecting the MSU in which Abdul–Akbar no longer was incarcerated.").

A court may still exercise jurisdiction over a case that is otherwise moot, however, if one of four exceptions are met: "(1) secondary or 'collateral' injuries survive after resolution of the primary injury; (2) the issue is deemed a wrong capable of repetition yet evading review; (3) the defendant voluntarily ceases an allegedly illegal practice but is free to resume it at any time; or (4) it is a properly certified class action suit." *Chong*, 264 F.3d at 384. Here, McDonald received the relief he requested by virtue of his transfer to another prison and removal from the SMU program, so there are no lingering secondary issues left unaddressed. The voluntary cessation exception is also inappropriate here, because it is generally not the role of the courts to second-guess the reasons behind prison administrators' decisions. *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). Moreover, McDonald's claims were not brought as part of a class action suit. Lastly, the "capable of repetition" exception applies when "(1) the challenged action is, in its duration, too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining

party will be subject to the same action again." *Rendell v. Rumsfeld*, 484 F.3d 236, 241 (3d Cir. 2007) (quoting *Spencer v. Kemna,* 523 U.S. 1, 17 (1998)). "The exception . . . is narrow and available only in exceptional situations." *Rendell*, 484 F.3d at 241. In *Capozzi*, the Third Circuit addressed the "capable of repetition" exception under nearly identical circumstances where a prisoner was transferred from the SMU at USP Lewisburg to ADX Florence. 560 F. App'x at 159. The Third Circuit determined that a prisoner's mere speculation that he may be returned to the SMU someday was not a reasonable expectation, and did not warrant the exceptional result of deciding a case that is otherwise moot. *Capozzi*, 560 F. App'x at 159. Because this case presents virtually identical facts, the Court finds *Capozzi* to be controlling. If McDonald ultimately is returned to the SMU, however, the Court notes that nothing in this decision would prevent him from filing a new action. *See Capozzi*, 560 F. App'x at 160.

IV. **RECOMMENDATION**

Based on the foregoing, it is recommended that:

1. The Defendants' motion to dismiss and for summary judgment (Doc. 22) be **GRANTED**;

2. McDonald's complaint (Doc. 1) be **DISMISSED AS MOOT**; and

3. The Clerk of Court be directed to **CLOSE** this case.

BY THE COURT:

Dated: July 28, 2015

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States Magistrate Judge**

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDWARD MCDONALD, JR.,<br><br>      Plaintiff<br><br>   v.<br><br>J.E. THOMAS, et al.,<br><br>      Defendants | CIVIL ACTION NO. 1:13-CV-01471<br><br>(RAMBO, J.)<br>(MEHALCHICK, M.J.) |

### NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **July 28, 2015**. Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

**Dated: July 28, 2015**　　　　　　　　　　　　　　　　*s/ Karoline Mehalchick*
　　　　　　　　　　　　　　　　　　　　　　　　　　　　**KAROLINE MEHALCHICK**
　　　　　　　　　　　　　　　　　　　　　　　　　　　　**United States Magistrate Judge**